38

THE SHELL COMPANY (P. R.) LIMITED and ESSO STANDARD OIL COMPANY (P. R.), Plaintiffs and Respondents, v. JOSÉ BERROCAL, ETC. ET AL., Defendants and Petitioners.

No. 12161. Submitted March 6, 1959.—Decided December 21, 1960.

*Alberto Picó* for petitioner Government of the Capital, etc. *P. E. Muñiz Ramos* and *Luis Torres Bonet* for petitioners Municipality of Ponce and Municipality of Guaynabo, respectively. *Sifre & Ruiz Suria* for respondent The Shell Co. (P. R.) Limited. *Beverley, Castro* and *López Baralt* for respondent Esso Standard Oil Company (P. R.).

MR. JUSTICE BELAVAL delivered the opinion of the Court.

Plaintiff Shell is an English corporation engaged in the sale of gasoline and other by-products of petroleum in the entire Island of Puerto Rico. Its principal office is in the city of San Juan and the company management, the operation department, and the different divisions of sales, finance, sales promotion, personnel, advertising, public relations, and a certain body of legal aid are all located in said office.

The company has three district offices in the cities of Ponce, Mayagüez, and Guaynabo, and it maintains gasoline tanks in Guaynabo and Guayanilla. A district manager is in charge of the district offices and a plant foreman is in charge of the two storage tanks. All the purchases for the distribution of gasoline products and for the equipment of the different offices in the island are made through the principal office in San Juan. In each district office there are salesmen, office clerks, and some laborers, and in each storage plant there are supervisors of distribution, of equipment, of construction, mechanics, electricians, drivers, and semi-skilled laborers. All these employees, except for some incidental workers, are hired and dismissed by the San Juan office, and it is in this office that the employees' pay roll is prepared.

The area assigned to each district office is not clearly established by the evidence. It seems that the Guaynabo office covers the area from Aguada to Yabucoa, and in the center up to San Lorenzo, Cayey, Orocovis, and Ciales. The Guaynabo office covers the entire metropolitan area, including the whole perimeter of the Capital of Puerto Rico. As to the sales, the evidence shows that one fourth of the sales takes place within the city of San Juan, the Capital of Puerto Rico; another one fourth takes place in the towns covered by the Guaynabo office, except the city of San Juan, another fourth by the district office of Ponce, and still another by the Mayagüez office. Except in some cases, which are unim-

portant, the sales are transacted through the district offices by the salesmen assigned to the district office, although the orders for sales may be obtained in the three cities where the district offices are situated as well as in the cities and towns within the area covered by the district offices.

There are two kinds of sales, cash and credit. Almost all of the cash sales are made to the gasoline stations. All the contracts with the gasoline stations are approved, prepared and executed in the San Juan office. In the case of cash sales, the invoices are prepared in the district offices and collected by them, the total amount thereof being sent daily to the principal office by means of a manager's check made out in a local bank in favor of the company, with the exception of the Guaynabo district office which does not have a local bank and in that case the total amount is deposited daily in the general account of the company in a San Juan bank.

In cases of credit sales, the order of sale is sent to the main office. Here the receipts are prepared and collected directly by it. In these credit sales the main office sends a copy of the bills to be collected to the district manager so that he will negotiate, if necessary, the payment thereof. The evidence reveals a number of retail sales made by the company but it is difficult to separate the amount of such sales from among the total amount of sales and it may be concluded that the wholesales constitute the general rule and the retail sales the exception. This being so, we shall consider that the volume of sales stipulated herein are wholesale transactions.

Except for credit acounts up to a hundred dollars, which the district manager is authorized to open, the procedure used to open other credit accounts is the following: the application for a credit account is presented by the potential buyer in the district office; the district manager forwards it to the principal office; the finance division studies the application, inquires into the economic situation of the applicant and determines whether or not it should grant him the credit and

up to what amount, which it notifies both to the district offices and to the applicant. Once the credit account is authorized, the district manager sells to the potential buyer on credit up to the amount of credit which has been granted him, without any further intervention from the main office.

The district offices operate under the direction of the main office, either by means of individual orders or by virtue of the regulations prepared by the main office for distribution, sale and credit. Aside from the authority to hire occasionally some laborers and to open credit accounts up to a hundred dollars, which we have already mentioned, the district managers have no authority other than to sell, collect what is owed to the company, and order the delivery of gasoline from the storage tanks to answer the local orders. Regarding this last authority the evidence is not very satisfactory so to speak, since the plant superintendence is much more complex and complete and the supervision is much broader. It seems that aside from indicating the place where the gasoline is to be delivered, the district managers have no other authority as to the direction, operation and co-ordination of the work in the storage plants. It seems that this job is in the hands of an operation department situated in the main office.

There are certain special dependencies which operate at the airport and which are situated within the municipality of Carolina. There is also an agent who resides in Caguas and another in Arecibo who supposedly belong to the district office in Guaynabo, although in the company charter they are separated from the Guaynabo office. Besides, there are certain company-owned gasoline stations, some of which are leased to independent retailers and some which are not, whose mode of operation is not satisfactorily explained, nor how much they sell or whether they are engaged in retail or wholesale business, for which reason we shall not pass on the kind of license tax they should pay for any item other than the one corresponding to a wholesale business.

There is no doubt that the Shell company is engaged in the wholesale business in Puerto Rico and that its main office is located in the city of San Juan, Puerto Rico. Although it is true that because of the nature of its business, the Shell company is obliged to keep certain district offices in Ponce, Mayagüez and Guaynabo and certain tanks for the storage of gasoline in Guaynabo and Guayanilla, yet all these branch offices do not constitute different or separate business from the main one, but all of them together form part of a single business, the wholesale business of plaintiff-respondent. Contrary to the finding of the lower court, it is in San Juan where the wholesale business is located and in the districts the sales offices. To hold that the San Juan offices are mere "administrative offices" is an erroneous finding from the evidence offered in court.

Thus, having disposed of the sole question of fact raised in this case, there only remains for decision the sole question of law involved herein: whether because of the fact that the Shell company sells its products in other cities and towns different from the city where its wholesale business is established, the Government of the Capital is prevented from levying a license tax on the total volume of business transacted in the Island of Puerto Rico.

The result of the evidence compels us to discard any application to these facts of § 18(4) of Act No. 99 of May 15, 1931, as amended by Act No. 39 of April 28, 1945—21 L.P.R.A. § 421—which authorizes the Board of Commissioners of the Government of the Capital to levy reasonable taxes and excises within the jurisdictional limits of the Capital, in addition to those already imposed by the Industrial and Commercial License Tax Act. It is clear that said provision is applicable when the business is totally enclosed within the territorial limits of the Capital, but not when in addition to the business carried on in the Capital, the whole-

saler covers other towns in the island, in which case the License Tax Act should prevail.

Therefore, the law applicable to the case at bar is Act No. 26 of March 28, 1914, which authorizes the municipal councils of the Commonwealth of Puerto Rico to levy and collect on and from every person, firm, association, partnership, corporation *or other form whatsoever of commercial or industrial organization* engaged in ... a wholesale business a municipal license tax which shall be paid to the treasurers of the municipalities *in which such businesses or industries are situated* on the basis of the "volume of business" transacted during the calendar year immediately preceding, and the "volume of business" shall be understood to be the gross receipts in any municipality of the business or industry proceeding from its business transactions in Puerto Rico.

It seems that there has been a certain confusion with regard to wholesale business: whether the "volume of business" shall be determined on the basis of the wholesale operations transacted only in the municipality wherein the main business or office is located and not on the basis of the total "volume of business" transacted in the entire Island of Puerto Rico, when the wholesale activities are extended throughout the entire island. The case before us deals with a wholesale business which also has other subsidiary businesses such as branch offices, warehouses and other similar forms of commercial organization outside the municipality wherein the wholesale business or main office of the wholesaler is located.

Act No. 26 of 1914 has certain provisions which, if carefully analyzed, seeking a harmonious whole, will somewhat clarify the question. Section 1 provides that in the case of businesses or industries, carried on both at the main office and any branch or warehouse thereof, within the same municipality, the license tax shall be levied only on the main organization, but on the basis of the aggregate amount of such businesses or industries carried on both at the main

organization and all branches and warehouses thereof. Although this provision refers to businesses enclosed within a single municipality, it is evident that the "volume of business" is determined on the basis of all the operations of the main organization, its branches and warehouses.

Section 4, which establishes what constitutes the "volume of business" makes it clear that this term shall be understood as comprising the gross receipts which the business or industry may receive in *any municipality* from its business transaction *in Puerto Rico*. This distinction becomes more evident when one analyzes the enumeration of the several businesses contained in § 4, such as banking business, freight, and passenger transportation business, commission agents or brokers, telephone or electric service, which businesses require for its operation more than one municipality, such as the distribution of gasoline which is the business carried on by the plaintiff-respondent. Puerto Rico being such a small territory, it is beyond any thought that at the time when Act No. 26 was approved, and much less now, the idea was that there would be in each city or town of Puerto Rico a different and separate transportation business, communication business, banking facilities on which a strictly municipal license tax could be levied.

From the reasoning set forth above it is easy to conclude that in the case of a wholesale business with its main office in a specific municipality but doing business throughout the entire island, the license tax should be levied by the municipality wherein the main organization is established, irrespective of the location of its other commercial organizations such as sales offices, subsidiary offices or warehouses, provided that the nature of the wholesale activities is clearly established by the evidence, and the total amount of the license tax shall be determined on the basis of the "volume of business" transacted in the entire island, as was done by the Government of the Capital in the case at bar. As the case of the

Esso Standard Oil Company was submitted to this Court jointly with this case it is likewise decided by the terms of this opinion.

The judgment appealed from will be reversed.

Mr. Justice Pérez Pimentel and Mr. Justice Saldaña dissented.